IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

PATRICK G. HELLER,

  Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

  Defendant.

No. C12-0016

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  A. Heller's Education and Employment Background . . . . . . . . . . . . . 4
  B. Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . 5
    1. Heller's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . 5
    2. Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . 7
  C. Heller's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V. CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
  A. ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . 10
  B. Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . 12
    1. Credibility Determination . . . . . . . . . . . . . . . . . . . . 12
    2. Fully and Fairly Developed Record . . . . . . . . . . . . . . . 15

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Patrick G. Heller on February 1, 2012, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title XVI supplemental security income ("SSI") benefits. Heller asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him SSI benefits. In the alternative, Heller requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On December 4, 2008, Heller applied for SSI benefits. In his application, Heller alleged an inability to work since February 15, 2007 due to ADHD, anxiety, depression, headaches, and hearing loss. Heller's application was denied on March 19, 2009. On August 24, 2009, his application was denied on reconsideration. Heller timely requested an administrative hearing before an Administrative Law Judge ("ALJ"). On December 16, 2010, Heller appeared via video conference with his attorney before ALJ John E. Sandbothe for an administrative hearing. Heller and vocational expert Melinda Stahr testified at the hearing. In a decision dated December 23, 2010, the ALJ denied Heller's claims. The ALJ determined that Heller was not disabled and not entitled to SSI benefits because he was functionally capable of performing his past relevant work as a packager and clean-up worker. Heller appealed the ALJ's decision. On December 14, 2011, the Appeals Council denied Heller's request for review. Consequently, the ALJ's December 23, 2010 decision was adopted as the Commissioner's final decision.

On February 1, 2012, Heller filed this action for judicial review. The Commissioner filed an Answer on April 20, 2012. On May 23, 2012, Heller filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing his past relevant work as a packager or clean-up worker. On July 23, 2012, the Commissioner filed a responsive

brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On August 1, 2012, Heller filed a reply brief. On March 6, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's

decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Heller's Education and Employment Background

Heller was born in 1958. At the administrative hearing, Heller initially stated that he was a high school graduate, but later indicated that he dropped out of high school and

eventually earned a GED. Heller also stated that after high school, he took classes in truck driving at Hawkeye Tech in Waterloo, Iowa.

The record contains a detailed earnings report for Heller. The report covers the time period of 1974 to 2010. Heller had minimal earnings (less than $1,000) in 1974 and 1975. From 1976 to 1984, he earned between $4,231.54 (1976) and $19,155.92 (1980). He had no earnings in 1985. From 1986 to 1993, he earned between $3,208.67 (1986) and $16,551.52 (1991). He had no earnings from 1994 to 1996. In 1997, he earned $5,874.53. He had no earning in 1998. In 1999, he earned $3,831.75, and in 2000, he earned $9,001.28. He had no earnings in 2001 and 2002. In 2003, he earned $4,930.00. Except in 2005, when he earned $36.47, Heller has no earnings since 2004.

### B. *Administrative Hearing Testimony*

#### 1. *Heller's Testimony*

At the administrative hearing, Heller's attorney asked Heller what prevented him from being able to work. Heller's initial response was "I don't know, I really don't know how to explain [it]."[1] Heller's attorney further questioned Heller:

> Q: Well, do you have some mental, emotional problems, do you think?
> A: Yes, sir.
> Q: Can you -- can you describe what those are like, what your -- what your emotions are like?
> A: I really don't know how to describe it, really, I struggle every day with --
>
> . . .
>
> A: I -- I just -- I really don't know how to explain it too good, I just struggle day to day, just, getting up and doing -- just surviving, you know.
> Q: Is it hard to get up and get motivated to do anything?
> A: Yes.

---

[1] Administrative Record at 35.

(Administrative Record at 35.) Heller indicated that he sees a psychiatrist monthly for treatment. He stated that he has been diagnosed with anxiety, depression, and ADHD. Heller also testified that he has difficulty with concentration, focus, and being easily distracted.

Heller also indicated that he problems with headaches. Specifically, Heller testified that he gets migraine headaches which cause his eyes to hurt. He stated "light hurts my eyes, and noise hurts my head."[2] When he gets a headache, Heller lays down and takes aspirin. Prescription medication has been unhelpful in alleviating his headaches. He stated that he usually gets this type of headaches every two to three weeks. However, he also testified that sometimes "I get them three or four days in a row, and then I won't have -- I might not get them for a couple of weeks, maybe three or four weeks even."[3]

The ALJ also questioned Heller. The ALJ inquired about Heller's daily activities:

> Q: So, describe your average day for me, what do you do all day?
> A: I -- I usually -- I get up to see the kids off to school, on the bus -- get them on the bus, it's always a challenge, get them going and then off I go back to bed after that for a while, for a couple of hours, then I put the -- load the dishwasher up -- hook it up and maybe wash a little clothes, . . . I really don't do a whole lot more than that.
> Q: So, what do you do in the afternoon?
> A: Well, it's usually afternoon by the time I get that done.
> Q: Okay, so what do you do in the evening?
> A: Well, I -- I usually try to cook a meal for the children when they get home from school and after -- and then get them to bed, that pretty much takes care of my afternoon.
> Q: What do you do to entertain yourself?

---

[2] *Id.* at 40.

[3] Administrative Record at 41.

A:   I watch some TV occasionally but I pretty much --
about all I'll do is I'll go for walks occasionally, I don't
do a lot --

(Administrative Record at 44-45.)

### 2.   Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Melinda Stahr with a hypothetical for an individual with "no physical limitations to speak of, however simple, routine, competitive work; no contact with the public; [and a] regular pace."[4] The vocational expert testified that under such limitations, Heller could perform his past work as a packager and clean-up worker. The ALJ asked a second hypothetical which was identical to the first hypothetical, except with the added limitation that the individual would need to work at a slow pace for one-third of the day. The vocational expert testified that under such limitations, Heller would be precluded from full-time competitive work.

### C.  Heller's Medical History

Beginning in February 2006, Heller met monthly with Dr. Douglas H. Jones, M.D., for treatment of his mental health issues. Generally, Heller complained of problems with energy and concentration. By May 2006, Heller was on a medication regimen that made him stable. Except for August 2006, when Heller ran out of medication, and May 2008, when Dr. Douglas adjusted Heller's medication due to "suboptimal" concentration, Dr. Douglas found Heller to be "stable" or "doing well" on his medication regimen through December 2008.[5] For this entire time period, Dr. Douglas consistently diagnosed Heller with major depressive disorder, ADHD, and amphetamine use in full sustained remission.

On June 5, 2007, Dr. John Tedesco, Ph.D., reviewed Heller's medical records and provided Disability Determination Service ("DDS") with a Psychiatric Review Technique

---

[4] *Id.* at 52.

[5] *See* Administrative Record at 318-330; 357-366; 387-398; 420-439.

and mental residual functional capacity ("RFC") assessment for Heller. On the Psychiatric Review Technique assessment, Dr. Tedesco diagnosed Heller with ADHD, major depressive disorder, and amphetamine use in full sustained remission. Dr. Tedesco determined that Heller had the following limitations: mild restriction of activities of daily living, no difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Tedesco determined that Heller was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the general public. Dr. Tedesco concluded that:

> [Heller] does report limited socialization in his daily activity. However he is active with his wife and children. He is likely to have some difficulty with sustained social interaction but should be able to do so in environments with limited social demands. [Heller's] depression and ADHD have been stable for the past year. He presents as able to perform a wide range of simple and complex tasks (multiple steps; cooking and fishing), with some varied concentration and pace. [Heller's] allegation of limitations are credible to the extent reflected in the [mental] RFC [assessment].

(Administrative Record at 338.)

On December 29, 2008, Heller met with Julie K. Shaw, ARNP, complaining of chronic headaches. Heller described the headaches as being throbbing or pounding. Heller rated the pain at an 8 on a scale of 1 to 10, with 10 being the most severe pain. According to Heller, the headaches occurred several times per week and could last for up to 3 days. Heller indicated that he relieved the pain by lying down, sleeping, reducing

stimuli, and medication. Shaw diagnosed Heller with common migraine and cervicalgia. Shaw recommended medication as treatment.[6]

On February 18, 2009, Dr. Jennifer Ryan, Ph.D., reviewed Heller's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Heller. On the Psychiatric Review Technique assessment, Dr. Ryan diagnosed Heller with ADHD, major depressive disorder, and a history of amphetamine abuse. Dr. Ryan determined that Heller had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Ryan determined that Heller was moderately limited in his ability to: carry out detailed instructions, maintain attention and concentration for extended periods, and accept instructions and respond appropriately to criticism from supervisors. Dr. Ryan concluded that Heller's medical history:

> reports relative stability of [Heller's] condition, with indication of variable concentration. [Heller] reports distractibility and difficulty with detailed instructions consistent with [medical] documentation and moderate limitations. [Heller] also reports social isolation and difficulty with authority. There are no major credibility or consistency issues. The preponderance of the evidence in the file supports the assertion that [Heller] is able to follow simple to mildly complex instructions and perform work tasks consistent with this ability.

(Administrative Record at 446.)

From June 2009 to October 2010, Heller continued to meet with Dr. Jones on a monthly basis for his mental health concerns. Dr. Jones continued to diagnose Heller with major depressive disorder, ADHD, and amphetamine abuse in full sustained remission.

---

[6] At a follow-up appointment on March 5, 2009, Shaw found that Heller's headaches had "significant" improvement with medication. *See* Administrative Record at 462-465.

9

Except for a progress note in November 2009, where Heller was having difficulty sleeping, Dr. Jones generally found that Heller was doing "quite well."[7]

On June 17, 2010, at the request of the Iowa Department of Human Services, Dr. Jones filled out a Report on Incapacity for Heller. Dr. Jones diagnosed Heller with major depressive disorder and ADHD. Dr. Jones opined that Heller's diagnoses were permanent. Dr. Jones also opined that Heller is able to care for children at home, but is unable to perform "work of any kind."[8] Dr. Jones noted that Heller had applied for long-term disability benefits, and indicated that he agreed that such an application was appropriate for Heller.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Heller is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be

---

[7] *See* Administrative Record at 489-500; 503-515.

[8] *Id.* at 519.

not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Heller had not engaged in substantial gainful activity since November 25, 2008. At the second step, the ALJ concluded from the medical evidence that Heller had the following severe impairments: ADHD, anxiety, depression, and a history of substance abuse. At the third step, the ALJ found that Heller did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Heller's RFC as follows:

> [Heller] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple, routine, repetitive work with no contact with the public. He can work at no more than a regular pace.

(Administrative Record at 16.) Also at the fourth step, the ALJ determined that Heller could perform his past relevant work as a packager and clean-up worker. Therefore, the ALJ concluded that Heller was not disabled.

### B. Objections Raised By Claimant

Heller argues that the ALJ erred in two respects. First, Heller argues that the ALJ failed to properly assess his subjective allegations of pain and disability. Second, Heller argues that the ALJ failed to fully and fairly develop the record by not ordering a consultative examination.

### 1. Credibility Determination

Heller argues that the ALJ failed to properly evaluate his subjective allegations of disability. Heller maintains that the ALJ's credibility determinations are not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Heller's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In his decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Heller's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Heller's] statements concerning the intensity, persistence and limiting effects of these symptoms are not

13

> credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> [Heller] experiences some symptoms and limitations; however, the record does not fully support the severity of [Heller's] allegations. [Heller] has received mental health treatment and responded well to appropriate medication. Medical records noted mild to moderate symptoms throughout the relevant period. [Heller] often reported he was doing well, and his treating doctor agreed in treatment notes. The medical evidence does not support the severity of [Heller's] allegations. . . .
>
> In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain [Heller's] allegations of disabling symptoms. . . . The credibility of [Heller's] allegations is weakened by a lack of supportive medical evidence. [Heller] responded well to treatment and demonstrated only mild to moderate symptoms throughout the record. [Heller] does experience some levels of symptoms and limitations but only to the extent described in the residual functional capacity.

(Administrative Record at 19.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Heller's treatment history, medical history, functional restrictions, and use of medications in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Heller's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously

considered, but for good reasons explicitly discredited Heller's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2.   *Fully and Fairly Developed Record*

Heller argues that in determining whether he was disabled, the ALJ failed to fully and fairly develop the record. Specifically, Heller argues that the ALJ did not have enough evidence to determine whether he was disabled. Heller maintains that the ALJ should have ordered a consultative examination. Heller concludes that this matter should be remanded for a consultative examination to fully and fairly develop the record on the issue of whether he is disabled.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

An ALJ also has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating

15

physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted). 20 C.F.R. § 416.919a(b) provides that a consultative examination may be purchased "to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Here, the ALJ thoroughly reviewed Heller's medical records and fully considered the opinions of treating and consultative sources.[9] The Court finds such medical evidence adequate for making a disability determination. No crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques. Accordingly, the Court determines that remand is unnecessary for a consultative examination. *See Barrett*, 38 F.3d at 1023 (an ALJ may order a medical examination when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled). Accordingly, the Court determines that the ALJ fully and fairly developed the record as to the medical evidence in this case. *See Cox*, 495 F.3d at 618.

Similarly, having reviewed the entire record, the Court finds that the ALJ properly considered Heller's medical records, observations of treating physicians, and Heller's own

---

[9] *See* Administrative Record at 17-19.

16

description of his limitations in making his RFC assessment for Heller.[10] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

## VI. CONCLUSION

The Court finds that the ALJ properly determined Heller's credibility with regard to his subjective complaints of disability. The Court also finds that the ALJ fully and fairly developed the record with regard to the medical evidence in the case, and made a proper RFC assessment for Heller. Additionally, the Court determines that remand is unnecessary for a consultative examination because no crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 23rd day of October, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[10] *Id.* at 16-19.